IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| THOMAS SCOT EDVALSON, | : | |
| | : | |
| Plaintiff, | : | |
| | : | NO. 5:22-CV-158-TES-MSH |
| VS. | : | |
| | : | |
| CALEB MCCLAIREN, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

## ORDER AND RECOMMENDATION

Presently pending before the Court is a Complaint seeking relief pursuant to 42 U.S.C. § 1983 filed by *pro se* Plaintiff Thomas Scot Edvalson, an inmate presently incarcerated at the Dodge State Prison in Chester, Georgia (ECF No. 1). Plaintiff has also moved for leave to proceed *in forma pauperis* (ECF No. 2) and for appointed counsel (ECF No. 3). For the following reasons, Plaintiff's motion for leave to proceed *in forma pauperis* is **GRANTED,** but it is **RECOMMENDED** that his claims be **DISMISSED without prejudice** and that Plaintiff's motion for appointed counsel is **DENIED as moot.**

### MOTION TO PROCEED *IN FORMA PAUPERIS*

Plaintiff seeks leave to proceed without prepayment of the filing fee or security therefor pursuant to 28 U.S.C. § 1915(a). Because it appears Plaintiff is unable to pay the cost of commencing this action, his application to proceed *in forma pauperis* (ECF No. 2) is **GRANTED**.

However, even if a prisoner is allowed to proceed *in forma pauperis*, he must

nevertheless pay the full amount of the $350.00 filing fee. 28 U.S.C. § 1915(b)(1). If the prisoner has sufficient assets, he must pay the filing fee in a lump sum. If sufficient assets are not in the account, the court must assess an initial partial filing fee based on the assets available. Despite this requirement, a prisoner may not be prohibited from bringing a civil action because he has no assets and no means by which to pay the initial partial filing fee. 28 U.S.C. § 1915(b)(4). In the event the prisoner has no assets, payment of the partial filing fee prior to filing will be waived.

Plaintiff's submissions indicate that he is unable to pay the initial partial filing fee. Accordingly, it is hereby **ORDERED** that his complaint be filed and that he be allowed to proceed without paying an initial partial filing fee.

## I.    Directions to Plaintiff's Custodian

Hereafter, Plaintiff will be required to make monthly payments of 20% of the deposits made to his prisoner account during the preceding month toward the full filing fee. The clerk of court is **DIRECTED** to send a copy of this Order to Plaintiff's current place of incarceration. It is **ORDERED** that the warden of the institution wherein Plaintiff is incarcerated, or the sheriff of any county wherein he is held in custody, and any successor custodians, shall each month cause to be remitted to the Clerk of this Court twenty percent (20%) of the preceding month's income credited to Plaintiff's account at said institution until the $350.00 filing fee has been paid in full. 28 U.S.C. § 1915(b)(2). In accordance with provisions of the Prison Litigation Reform Act ("PLRA"), Plaintiff's custodian is hereby authorized to forward payments from the prisoner's account to the Clerk of Court each month until the filing fee is paid in full, provided the amount in the account exceeds

$10.00.  It is **ORDERED** that collection of monthly payments from Plaintiff's trust fund account shall continue until the entire $350.00 has been collected, notwithstanding the dismissal of Plaintiff's lawsuit or the granting of judgment against him prior to the collection of the full filing fee.

## II.     Plaintiff's Obligations Upon Release

An individual's release from prison does not excuse his prior noncompliance with the provisions of the PLRA.  Thus, in the event Plaintiff is hereafter released from the custody of the State of Georgia or any county thereof, he shall remain obligated to pay those installments justified by the income to his prisoner trust account while he was still incarcerated.  The Court hereby authorizes collection from Plaintiff of any balance due on these payments by any means permitted by law in the event Plaintiff is released from custody and fails to remit such payments.  Plaintiff's Complaint may be dismissed if he is able to make payments but fails to do so or if he otherwise fails to comply with the provisions of the PLRA.

## PRELIMINARY REVIEW

### I.     Standard of Review

The PLRA obligates the district courts to conduct a preliminary screening of every complaint filed by a prisoner who seeks redress from a government entity, official, or employee.  *See* 28 U.S.C. § 1915A(a).  Screening is also required under 28 U.S.C. § 1915(e) when the plaintiff is proceeding IFP.  Both statutes apply in this case, and the standard of review is the same.  When conducting preliminary screening, the Court must accept all factual allegations in the complaint as true.  *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th

Cir. 2006) *abrogated in part on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010); *Hughes v. Lott*, 350 F.3d 1157, 1159-60 (11th Cir. 2003). *Pro se* pleadings, like the one in this case, are "'held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.'" *Hughes*, 350 F.3d at 1160 (citation omitted). Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A(b).

A claim is frivolous if it "'lacks an arguable basis either in law or in fact.'" *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (citation omitted). The Court may dismiss claims that are based on "'indisputably meritless legal'" theories and "'claims whose factual contentions are clearly baseless.'" *Id.* (citation omitted). A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "'merely create[] a suspicion [of] a legally cognizable right of action.'" *Twombly*, 550 U.S. at 555 (citation omitted). In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id.* at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a

4

statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. *See Chappell v. Rich*, 340 F.3d 1279, 1282-84 (11th Cir. 2003).

## II. Factual Allegations

Plaintiff's claims arise from his confinement at the Dooly State Prison ("DSP"), where he contends he was attacked by his cellmate. According to the Complaint, on the night of August 8, 2018, Plaintiff developed "good reason to believe" that his cellmate was going to harm him. Compl. 15, ECF No. 1. Plaintiff thus began packing his belongings so that he could move out of his cell. *Id.* When Officer John Doe #1 approached the cell, Plaintiff told Officer Doe #1, "'I am packing up my property to move out because my cellmate and I are having some problems. He told me he won't let me leave, so if you don't see me outside of my cell tonight, there is something wrong going on in there.'" *Id.* Plaintiff states that Officer Doe #1 acknowledged that he understood, and Plaintiff continued packing his property. *Id.* Shortly after Officer Doe #1 left, Plaintiff's cellmate "ripped" a bag of Plaintiff's food out of his hands, scattering the food on the floor, and blocked Plaintiff's access to the door. *Id.* When Officer Doe #1 returned to the cell to lock the doors for the evening, he "had to peer around" Plaintiff's cellmate and saw Plaintiff sitting down on the stool in the cell with food scattered on the floor, but he "just slammed the door shut and continued on." *Id.*

During the late evening and early morning hours between August 8 and 9, 2018, Plaintiff's cellmate blocked the window of the cell with cardboard and sexually assaulted and severely beat Plaintiff. Compl. 15, ECF No. 1. The assault lasted approximately three hours. *Id.* Plaintiff alleges that Defendant Officer John Doe #2, the prison guard on duty that evening, should have noticed that his cellmate had obstructed the window during their rounds, but he states that "[i]t was very common for officers not to be present for a good portion of the day, and especially the night, due to lack of staffing." *Id.* Plaintiff acknowledges that Officer Doe #1 and Officer Doe #2 may be the same person. *See id.*

Plaintiff reported the assault to Defendant Daniels—a prison captain—on the morning of August 9, 2018. Compl. 16, ECF No. 1. Defendant Daniels asked if Plaintiff wanted to "prosecute" his cellmate, but he told him that if he chose not to prosecute "[t]hey would get [the cellmate] for assault on an inmate, but the sexual aspect of the assault would be unable to be substantiated." *Id.* at 17. Defendant Daniels also told Plaintiff that if he chose not to prosecute, the cellmate would be transferred and "would never be at the same prison" as Plaintiff. *Id*. Plaintiff was placed in administrative segregation while Defendants conducted their investigation. *Id.*

When Plaintiff was released from segregation after approximately a month, two other inmates told him that his assailant "was never removed or even questioned about the incident." Compl. 17, ECF No. 1. On September 25, 2018, Plaintiff filed a formal grievance requesting that prison officials "review their procedure compliance and take action against" his assailant. *Id.* On October 11, 2018, Defendant McClairen called Plaintiff into his office so that Plaintiff could sign the form showing that Plaintiff's

6

allegations of sexual abuse had been found to be "unsubstantiated." *Id.* Plaintiff signed the form, expressed concern about "the lack of an investigation," and told Defendant McClairen he had filed a grievance about the issue. *Id.* Later that day, Plaintiff was advised he was being transferred to another prison "even though [his] grievance specifically requested 'no unrequested transfer or retaliation.'" *Id.* Plaintiff did not receive a response to the grievance within the time specified by Georgia Department of Corrections ("GDC") policy, so Plaintiff's stepfather complained to the GDC's ombudsman. *Id.* at 18. Defendant Chaney, the Deputy Warden of Care and Treatment, ultimately responded to the grievance. *Id.* Plaintiff contends that Defendant Chaney failed to address his concerns about the lack of an investigation and wrongfully asserted that Plaintiff had failed to identify his assailant. *Id.* Plaintiff appealed the grievance but did not receive a response until February 28, 2022—approximately twenty months after he filed the appeal. *Id.* Plaintiff contends that the response, signed by a Doe Defendant identified only as the "Commissioner's Designee, Southwest Region," reiterated Defendant Chaney's response "nearly word-for-word." *Id.*

Plaintiff contends that Defendants' action and inaction with respect to his assault violated his constitutional rights. As a result, he seeks declaratory relief, injunctive relief, compensatory damages, punitive damages, costs, and "any additional relief this court deems just, proper, and equitable." Compl. 5-6, ECF No. 1.

### III. Plaintiff's Claims

#### A. Failure-to-Protect Claims

Plaintiff's Complaint gives rise to a claim that Defendants failed to protect him from

7

being assaulted at DSP. This type of claim is generally cognizable under the Eighth Amendment to the United States Constitution. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prisoner asserting an Eighth Amendment failure-to-protect claim must allege (1) a substantial risk of serious harm; (2) the prison officials' deliberate indifference to that risk; and (3) causation. *Goodman v. Kimbrough*, 718 F.3d 1325, 1331 (11th Cir. 2013). To establish deliberate indifference in this context, a prisoner must show that prison officials subjectively knew of the substantial risk of serious harm and that the prison officials knowingly or recklessly disregarded that risk. *Id.* at 1332. Negligent failure to protect an inmate from attack will not support a § 1983 claim. *See id.*

Plaintiff first suggests that John Does #1 and #2 should have taken some action to prevent the attack on Plaintiff. As a preliminary matter, the general rule is that "fictitious party pleading is not permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) (per curiam). The only exception to this rule is when the plaintiff's description of the defendant is so specific that the party may be identified for service even though his actual name is unknown. *See id.* (citing *Dean v. Barber*, 951 F.2d 1201, 1215-16 (11th Cir. 1992)). Therefore, to proceed against an unnamed defendant, a plaintiff must provide a "description of some kind which is sufficient to identify the person involved so that process can be served." *Dean*, 951 F.2d at 1216 (internal quotation marks omitted). Plaintiff has failed to provide this kind of description in this case, and his claims could be dismissed on this ground alone. *See, e.g., Vielma v. Gruler*, 808 F. App'x 872, 880-81 (11th Cir. 2020) (per curiam) (observing that "our precedent has never permitted John Doe pleading solely on the ground that discovery might reveal an unnamed defendant's

8

identity" instead requiring "an unambiguous description of a defendant that enables service of process"); *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1318 n.4 (11th Cir. 2015) (declining to address claims against "John Doe Deputies" because they were "not proper parties" in the action); *Richardson*, 598 F.3d at 738 (plaintiff's description of "John Doe (Unknown Legal Name, Guard, Charlotte Correctional Institution" was "insufficient to identify the defendant among the many guards employed at CCI"). The claims against the Doe Defendants in this action should therefore be dismissed without prejudice.

Furthermore, the facts as alleged in the Complaint do not show that John Doe #1 was deliberately indifferent to a substantial risk that Plaintiff's cellmate would seriously harm him. Establishing deliberate indifference in this context requires making both an objective and subjective showing. *Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019). "Subjectively, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . also draw that inference." *Id.* (internal quotation marks omitted) (alteration in original). An inmate must establish that the prison official has "'more than a generalized awareness of risk'" to make out a claim for deliberate indifference. *Id.* at 1234 (quoting *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1101-02 (11th Cir. 2014)). An inmate can do this by pleading facts showing "that he was in an environment so beset by violence that confinement, by its nature, threatened him with the substantial risk of serious harm" or by providing prison officials with details about a specific threat sufficient "to enable them to conclude that it presents a 'strong likelihood' of injury, not a 'mere possibility.'" *Id.* at 1235-36 (quoting

9

*Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015)). The inmate must then establish that the prison official objectively "responded to the known risk in an unreasonable manner, in that he or she knew of ways to reduce the harm but knowingly or recklessly declined to act." *Id.* (internal quotation marks omitted).

In this case, Plaintiff has not alleged any facts suggesting that DSP was so pervasively violent that merely being housed there posed a substantial risk of serious harm to him. Indeed, Plaintiff has not alleged facts about any other inmate assaults at that facility. Though Plaintiff does note his belief that the prison was understaffed and had inadequate camera surveillance, he has also failed to plead facts sufficient to show that "pervasive staffing and logistical issues" such as these "render[ed] prison officials unable to address near-constant violence, tensions between different subsets of a prison population, and unique risks posed by individual prisoners or groups of prisoners due to characteristics like mental illness." *Marbury*, 935 F.3d at 1235.

Plaintiff has also failed to allege that John Doe #1 had enough details about the specific threat posed by Plaintiff's assailant to show that there was a strong likelihood that Plaintiff would be assaulted. Plaintiff alleges that he told John Doe #1 that he was moving out of the cell because he was "having some problems" with his cellmate; that his cellmate said he wouldn't let Plaintiff leave; and that if John Doe #1 didn't see Plaintiff outside of his cell later that night "there is something wrong going on in [the cell]." Compl. 15, ECF No. 1. Plaintiff did not, however, specify the nature of the "problems" he was having with his cellmate, tell John Doe #1 his cellmate had threatened to harm him, or explain that he feared being attacked by his cellmate. Perhaps more significantly, when John Doe #1

10

returned to Plaintiff's cell to lock the doors for the evening, Plaintiff did not advise John Doe #1 that the situation had escalated or that he feared an assault at that time. Although Plaintiff has alleged that his cellmate was standing in the doorway of the cell and Plaintiff was "sitting down with food scattered all over the floor," *id.*, it is unclear why this scenario should have shown John Doe #1 that Plaintiff was in danger, particularly in the absence of any further expression of concern from Plaintiff. For these reasons, Plaintiff has failed to allege facts sufficient to show that John Doe #1 was deliberately indifferent to a substantial risk that Plaintiff would be seriously harmed in his cell.

Plaintiff has similarly failed to allege that John Doe #2 had knowledge of the specific risk posed by Plaintiff's assailant. Plaintiff alleges that John Doe #2, "who may or may not be the same person as John Doe #1, was the officer tasked with making rounds, looking into each cell routinely throughout the night to ensure there were no problems or emergencies requiring attention." Compl. 15, ECF No. 1. Plaintiff further alleges that John Doe #2 "either never made rounds, never looked in the windows, or perhaps was never even in the dorm that night." *Id.* But the "failure to follow procedures does not, by itself, rise to the level of deliberate indifference because doing so is at most a form of negligence." *Taylor v. Adams*, 221 F.3d 1254, 1259 (11th Cir. 2013). Plaintiff does not allege any facts that suggest that John Doe #2 "had a subjective awareness of a substantial risk of serious physical threat to Plaintiff." *Carter*, 352 F.3d at 1350.[1] Absent such

---

[1] This is true even if John Doe #1 and John Doe #2 are the same person. As discussed above, Plaintiff did not communicate enough detail about the specific threat posed by his cellmate to put John Doe #1 on notice that there was such a strong likelihood that Plaintiff would be assaulted that

allegations, Plaintiff has failed to state a claim upon which relief may be granted. *See Tucker v. Evans*, 276 F.3d 999, 1001-02 (8th Cir. 2002) (holding that allegations that prison guard "failed to properly perform his inspection duties, misinterpreted an argument between cellmates, [and] failed to properly supervise the barracks" did not "rise to the level of a constitutional wrong"); *see also Goodman*, 718 F.3d at 1332 (noting that prison guards' "failure to conduct the cell checks and head counts" was merely negligent and did not demonstrate that guards "*knew* of a substantial risk of serious harm" to plaintiff who was attacked by another inmate); *Hale*, 50 F.3d at 1582 (affirming grant of summary judgment to jailer in failure-to-protect case whose only alleged act of deliberate indifference was his failure to make rounds every thirty minutes). Plaintiff's claims against John Doe #2 should also be dismissed without prejudice.

Plaintiff also alleges that DSP Warden Defendant Johnson, McClairen, Chaney, and Deputy Warden of Care and Treatment John Doe #4 had a policy of permitting officers to be "absent from the dorms at Dooly State Prison," and this policy caused Plaintiff's injuries. Compl. 19, ECF No. 1. It is well-settled in the Eleventh Circuit that supervisory officials like these Defendants are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability. *See, e.g., Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). In the absence of an allegation that a supervisor personally participated in unconstitutional conduct, a prisoner must establish some other causal connection between the supervisor's actions and the alleged

---

John Doe #1's failure to do rounds or to notice that the window was covered amounted to more than negligence.

constitutional injury to hold the supervisor liable under § 1983. *See, e.g., Hendrix v. Tucker*, 535 F. App'x 803, 805 (11th Cir. 2013) (per curiam). This causal connection can be established if

> (1) a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation and he fail[ed] to do so; (2) the supervisor's improper custom or policy le[d] to deliberate indifference to constitutional rights; or (3) facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.

*Id.* "The standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous." *Id.* (internal quotation marks omitted).

In this case, Plaintiff's vague and conclusory allegation that Defendants had a policy of permitting their officers to be absent from the dorms at DSP is insufficient to meet this "extremely rigorous" burden. "A plaintiff can only allege the existence of a policy or custom by point[ing] to multiple incidents or multiple reports of prior misconduct by a particular employee." *Henley v. Payne*, 945 F.3d 1320, 1331 (11th Cir. 2019) (internal quotation marks omitted) (alteration in original). At most, Plaintiff states that "[i]t was very common for officers to not be present for a good portion of the day, and especially the night, due to lack of staffing I believe, and there was no camera surveillance anywhere in the whole building." Compl. 16, ECF No. 1. But Plaintiff has not pointed to any other incidents where inadequate supervision led to an inmate-on-inmate assault that would have given Defendants actual or constructive notice that their policies regarding staffing could lead to a constitutional violation. *See, e.g., Tucker*, 276 F.3d at 1001-03 (holding prisoner failed to establish basis for supervisory liability where prisoner had not pleaded facts

showing supervisors "had prior notice of a pervasive risk of harm created by under-staffing or of prior assaults in the barracks"). Moreover, it is not even clear—and Plaintiff acknowledges that he does not know—whether John Doe #2 was present in the dorm and failed to make his rounds; was not at all present in the dorm; made his rounds and did not notice the obstruction in the window of Plaintiff's cell; or made his rounds and decided to take no action regarding the obstruction. Consequently, it is not clear which (if any) of Defendants' policies actually caused the alleged constitutional violation in this case. *See Henley*, 945 F.3d at 1331-32 (affirming dismissal of supervisory liability claims against sheriff where plaintiff failed to allege facts sufficient to show that allegedly unconstitutional arrest was carried out pursuant to sheriff's custom or policy).[2] Because Plaintiff has failed to plead facts sufficient to show that a supervisory Defendant's policy or custom led to a violation of his constitutional rights, his supervisory liability claims are subject to dismissal.

### B. Claims Related to Grievance Procedures

Plaintiff also alleges that Defendants delayed resolving his grievances about the incident. Plaintiff's allegations that Defendants failed to properly and timely process his grievances, standing alone, fall short of stating an actionable constitutional claim. Prisoners in the Eleventh Circuit have no constitutionally-protected liberty interest in

---

[2] For example, Plaintiff alleges that the general policy at DSP was for officers to "knock on cell doors to take down all window obstructions." Compl. 16, ECF No. 1. Plaintiff therefore cannot claim that this particular policy caused his injury. *See Goodman*, 718 F.3d at 1335 (holding that there was no basis for supervisory liability where deputies ignored written policies of sheriff's department).

14

accessing a prison's grievance procedure. *Bingham v. Thomas*, 654 F.3d 1171, 1177 (11th Cir. 2011) (per curiam) (affirming dismissal of prison's claims that he was denied use of the prison's grievance procedure). These claims should therefore be dismissed without prejudice.

Somewhat relatedly, Plaintiff claims that other inmates told him that "as far as they could tell," his assailant "was never removed or even questioned about the incident." Compl. 17, ECF No. 1. This statement amounts to nothing more than speculation, however, and even if Plaintiff sought an order directing state authorities to conduct an investigation or bring criminal charges against Plaintiff's assailant, this Court does not have the power to grant such relief. *Otero v. U.S. Attorney Gen.*, 832 F.2d 141, 141 (11th Cir. 1987). Plaintiff, a private citizen, likewise has no power to originate criminal pleadings on his own initiative. *Id.* These allegations therefore do not give rise to a constitutional claim. *See Oliver v. Collins*, 904 F.2d 278, 281 (5th Cir. 1990) (affirming dismissal claims against sheriff who failed to press criminal charges against plaintiff's assailant because "[e]ven if [the sheriff] were the person with authority to decide whether or not to pursue criminal charges . . . "[t]he decision to file or not file criminal charges falls within [the] category of acts that will not give rise to section 1983 liability").

### C. Retaliation Claims

Finally, Plaintiff alleges that he was retaliated against because he was transferred to another prison after he told Defendant McClairen that he had filed a grievance concerning the lack of investigation into the incident. Compl. 17, ECF No. 1. It is well established that an adverse action imposed in retaliation for a prisoner's exercise of a constitutionally

protected right is actionable. *Wildberger v. Bracknell*, 869 F.2d 1467, 1468 (11th Cir. 1989) (per curiam). To state a retaliation claim, an inmate generally needs to show that he engaged in protected conduct; that the prison official's retaliatory conduct adversely affected the protected conduct; and a causal connection between the protected conduct and the adverse action. *See, e.g., Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011). A prisoner's "unsupported conclusory assertion about a retaliatory motive is not enough to state a plausible claim for relief." *Leonard v. Monroe Cnty., Fla.*, 789 F. App'x 848, 850-51 (11th Cir. 2019) (per curiam).

In this case, Plaintiff has failed to meet his burden of alleging specific facts showing that Defendant McClairen transferred Plaintiff because Plaintiff filed a grievance, particularly given that Plaintiff does even not allege that Defendant McClairen was named in the grievance or was actually responsible for ordering Plaintiff's transfer. *See Thomas v. Lawrence*, 421 F. App'x 926, 929 (11th Cir. 2011) (per curiam) (affirming dismissal of retaliation claims where prisoner's grievance complained about only one staff member, and "complaint failed to allege any facts that would suggest that any of the other named defendants had a reason to retaliate against him for filing the grievance" against the staff member named in the grievance). Plaintiff's conclusory and factually unsupported allegation that his transfer was retaliatory therefore does not state an actionable claim. *Allen v. St. John*, 827 F. App'x 1002, 1007 (11th Cir. 2020) (per curiam) (holding that prisoner's "retaliation claim was properly dismissed for lack of supporting facts" where the claim "contain[ed] only the conclusory assertion that [the prisoner] was retaliated

against, and that is not enough to state a claim upon which relief may be granted"). Plaintiff's retaliation claims should therefore be dismissed without prejudice.

### IV. Conclusion

For the foregoing reasons, Plaintiff's motion for leave to proceed *in forma pauperis* (ECF No. 2) is **GRANTED**. It is **RECOMMENDED,** however, that Plaintiff's Complaint be **DISMISSED without prejudice** and that Plaintiff's motion for appointed counsel (ECF No. 3) be **DENIED as moot.**

### OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations with the Honorable Tilman E. Self, III, United States District Judge, **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this Recommendation. Any objection is limited in length to **TWENTY (20) PAGES**. *See* M.D. Ga. L.R. 7.4. The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections. Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made. *See* 11th Cir. R. 3-1.

**SO ORDERED AND RECOMMENDED** this 28th day of June, 2022.

/s/ Stephen Hyles
UNITED STATES MAGISTRATE JUDGE